**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TADEUSZ KOWALEWSKI, NICHOLAS
KLIMIUK, OLEG LOGUNOVSKI and
STANISLAW PUCHALA, individually and on
behalf of others similarly situated,

            Plaintiffs,

    v.

RUDOLF SAMANDAROV a/k/a RUDY
SAMANDAROV, GROUP AMERICAR
TRANSPORTATION LLC, BC LEASING,
CORP., and individual partners of corporate
defendants,

            Defendants.

ECF CASE

Civil Action No. 07 CV 6706 (KMK)

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs, TADEUSZ KOWALEWSKI, NICHOLAS KLIMIUK, OLEG LOGUNOVSKI
and STANISLAW PUCHALA (collectively "Plaintiffs"), complaining of the Defendants
RUDOLF SAMANDAROV a/k/a RUDY SAMANDAROV, GROUP AMERICAR
TRANSPORTATION LLC, BC LEASING CORP. and individual partners (collectively
"Defendants"), by their attorneys, MARINA TRUBITSKY AND ASSOCIATES, PLLC, based
on their individual experiences and the investigation of their counsel, and upon information and
belief, respectfully show to this Court and allege on behalf of the proposed Plaintiff class defined
herein, and on behalf of the general public, as follows:

## JURISDICTION

1.     This action arises under the Racketeer Influenced and Corrupt Organizations Act of 1970,

        18 U.S.C. § 1961 ("RICO"), and the laws of New York.  Plaintiffs seek to recover

compensatory and punitive damage sustained, as a result of the Defendants' conduct, along with the costs of this suit, interest and reasonable attorney's fees.  The Court's jurisdiction is invoked under 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1337, 18 U.S.C. § 1964(c), and the doctrine of pendent jurisdiction.

2.      The Defendants are subject to the personal jurisdiction of this Court under Fed. R. Civ. P. Rule 4(e) under the nationwide service of process provisions of RICO, 18 U.S.C. § 1965.

3.      **Venue**:  Venue is proper in this District under 28 U.S.C. §§ 1391 (b) and 9(c).  A substantial part of the events and conduct giving rise to the violations of law complained of herein occurred in or emanated from this District.  In addition, Defendants continue to conduct regular business with consumers in this District.

## PARTIES

4.      That, at all times hereinafter mentioned, the Plaintiff, TADEUSZ KOWALEWSKI, is a resident of Bushkill, Pennsylvania.

5.      That, at all times hereinafter mentioned, the Plaintiff, NICHOLAS KLIMIUK, is a resident of Brooklyn, New York.

6.      That, at all times hereinafter mentioned, the Plaintiff, STANISLAW PUCHALA, is a resident of Brooklyn, New York.

7.      That, at all times hereinafter mentioned, the Plaintiff, OLEG LOGUNOVSKI, is a resident of Brooklyn, New York.

8.      That at all times hereinafter mentioned, Defendant, GROUP AMERICAR TRANSPORTATION LLC ("Defendant Group American or Defendant Americar") was and still is a domestic for profit limited liability company, duly organized and existing

under and by virtue of the laws of the State of New York, and has its primary place of business at 522 West 37th Street, New York, New York 10018.

9. That at all times hereinafter mentioned, Defendant, BC LEASING CORP. ("Defendant BC Leasing"), was and still is a domestic for profit business corporation, duly organized and existing under and by virtue of the laws of the State of New York, and has its primary place of business at 522 West 37th Street, New York, New York 10018.

10. That at all times hereinafter mentioned, Defendant RUDOLF SAMANDAROV a/k/a RUDY SAMANDAROV ("Defendant Samandarov") was the principal and agent of Defendants Group American and BC Leasing.  He also represents himself as the President of Defendant Group American and Defendant BC Leasing.

11. The Individual Defendant is the officer, director, manager and/or majority shareholder or owner of the Corporate Defendant and is individually responsible for the acts and practices set forth in the Complaint.

12. That at all times material to this Complaint, acting alone or in concert with each other, the Defendants have directed, controlled or participated in the acts and practices set forth in this Complaint.

## FACTUAL ALLEGATIONS

### (DEFENDANTS AMERICAR AND SAMANDAROV)

13. Defendant Americar specializes in providing ground transportation services (limousines and car service) on a pre-arranged or on demand basis in New York tri-state area. Defendant Americar operates a franchise business whereby it sells subscriptions to its franchisees.

14.    Each franchisee, also known as an American subscriber, acquires a right, during the term of a subscription, to participate in Defendant American's radio dispatch system and to use Defendant American's two-way radio and associated communications equipment ("Installed Communications Equipment" or "ICE"), certain other products and services in connection therewith.

15.    The Subscription Agreement sets forth all the rights and obligations of Defendant American and each person who executes a Subscription Agreement.

16.    Under its Subscription Agreement, Defendant American currently uses a Nextel direct connect radio system and provides each subscriber with a Nextel radio (the "Radio") equipping the subscriber to receive and respond to radio calls from Defendant American's communications headquarters.    These calls inform the subscriber of the location of customers who have telephoned or otherwise contacted Defendant American's communications headquarters for transportation service.

17.    In order to obtain a subscription, each prospective subscriber has to pay a subscription fee in the amount of at least $10,000.00 (the "Subscription Fee") to American at the time when he or she entered into a Subscription Agreement with Defendants.    The Subscription Agreement was to be paid in a lump sum upon signing the Agreement or in equal installment payments for a period not exceeding three years, plus interest on the unpaid balance at a rate determined from time-to-time by Defendant American and which is currently 12% per annum, but which in no event will exceed the maximum rate permitted by law.

18.    In their subscription agreement, Defendant Americar also represented that "it does not receive any payment from any person either offering financing to, or arranging financing for, a prospective Subscriber."

19.    On or about June 15, 2004, Defendant Samandarov opened a domestic corporation BC Leasing Corp. ("Defendant BC Leasing").

20.    The Subscription Agreement offered to Plaintiffs and the members of the Plaintiffs' class did not explicitly allow the subscribers to sell their subscriptions.  Under the Subscription Agreement offered to Plaintiffs and the members of the Plaintiffs' class, Defendant Americar's fee upon any assignment of a Subscription to another driver is ten percent (10%) of the purchase price plus any amounts then due to the company from the Subscriber.

21.    The Subscription Agreement offered to Plaintiffs and the members of the Plaintiffs' class also provides that if a Subscriber avails himself of the Defendant Americar's guarantee of Subscriber's vehicle loan, Subscriber would not be permitted to use such vehicle except in connection with servicing customers referred by Defendant Americar until such time as Subscriber's vehicle loan is satisfied and the Company's guarantee of such loan is released.

22.    Plaintiffs and the members of the Plaintiffs' class have complained that throughout the Class Period, Plaintiffs and the members of the Plaintiffs' class have not received the franchise offering circular for prospective franchisees as required by the State of New York.  In addition,  the circulars which were provided to subscribers were materially different from the one filed with the Attorney General's office. Defendant Samandarov modified Exhibit "A" and "D" of the Circular by omitting all information pertaining to

the list of current and terminated subscriptions. Hence, the circulars which were provided to the subscribers stated that the information pertaining to current and terminated subscriptions was inapplicable.

23. In addition, Plaintiffs and the members of the Plaintiffs' class have complained that throughout the Class Period, the franchise offering circular for prospective franchisees, which was offered to Plaintiffs and the members of the Plaintiffs' class, had failed to make the relevant disclosures of shareholder (agreement) and financial information which are required under the New York law.

24. Plaintiffs and the members of the Plaintiffs' class also complained that Defendants engaged in a fraudulent scheme whereby they sold their cars to their subscribers at an inflated price, and reaped additional illegal profits when they arranged for a financing of the subscription fee and the purchase price of the car with creditors such as League of Mutual Taxi Owners, Popular Ford Sales, Inc. a/k/a Ford Credit, and others.

25. In addition, unbeknownst to subscribers and without their consent, Defendant Samandarov, the owner of Defendants Americar and BC Leasing, transferred the titles to the cars purchased by the subscribes under the name of Defendant BC Leasing.

26. Defendants thereafter engaged in a fraudulent scheme whereby they confiscated the cars purchased by subscribers, as a result of forging the title and registration documents, causing many subscribers to lose their ability to service customers referred by Defendant Americar and utilize their subscription agreements to their benefit.

27. Defendants engaged in various other illegal schemes whereby they deducted the weekly automobile insurance premiums and car loan payments from the subscribers' paychecks but failed to pay those amounts to the subscribers' respective insurance companies and

lenders, causing many subscribers to default on their loans and insurance premium payments to their insurance companies and other creditors.

28. Plaintiffs and the members of the Plaintiffs' class also complained that they were unaware that once they entered into the subscription agreements with the Defendants, they would not be eligible to transfer their subscriptions back to Defendants.

29. During the Class Period, many subscribers had demanded a full refund of their money paid to Defendants for their subscription agreements. Defendants had ignored numerous complaints from disgruntled subscribers and frequently successfully prevented them from seeking legal advice by making various threats to them.

30. Henceforth, Defendants have been actively engaged in a scheme whereby they successfully transferred the cars from one innocent subscriber to the next under the false pretenses.

31. That at all times herein, the Corporate Defendants transacted an still transact substantial business and derived and still derive substantial revenue from services rendered in the State of New York.

32. Upon information and belief, the Individual Defendant, Samandarov, was and still is the owner, director, officer, shareholder, manger, employee and/or agent of the Corporate Defendants Americar and BC Leasing.

33. At all times herein, the Individual Defendant, Samandarov, has conducted business as the Corporate Defendants.

34. At all times relevant herein, the Individual Defendant, Samandarov, has acted for and on behalf of the Corporate Defendants, Americar and BC Leasing, with the power and authority vested in him as officer, agent and employee of the Corporate Defendants, and

has acted in the course and scope of his duties and functions as agent, employee and officer of the Corporate Defendants.

35.    Upon information and belief, Defendants Americar and BC Leasing are an alter ego of Defendant Samandarov, and as will be established at trial, for the purpose of the claims made by Plaintiffs herein, Defendants Americar and BC Leasing have no separate legal existence from Defendant Samandarov, and, as a result, this Corporate Defendants Americar and BC Leasing an the Individual Defendant Samandarov, individually and collectively, and jointly and severally, are liable for all claims made herein.

36.    Upon information and belief, at all times relevant herein, the Corporate Defendants Americar and BC Leasing had common employees; shared documentation pertaining to car, including but not limited to, registration, title, automobile insurance and payment, car loan information and repayment, were joint venturers with respect to obtaining and processing these documents and payments; and were alter egos of each other such that they do not have separate existence from each other, and as will be established at trial, for the purpose of the claims made by Plaintiffs herein, each of the Corporate Defendants has no separate legal existence from each other and collectively, and jointly and severally, the Corporate Defendants are liable for all claims made herein by Plaintiffs.

## CLASS ACTION

37.    That this civil action is brought as a class action against Defendants Americar and Samandarov, pursuant to Federal Rules of Civil Procedure 23(a)(1)-(4), 23(b)(1), (2) or (3) and case law thereunder, on behalf of themselves and all others similarly situated who comprise the following class (the "Class"), defined as follows:

> **All persons who entered into the subscription agreements with Defendants and who thereafter disputed their transactions with Defendants and/or were defrauded by Defendants and who are interested in pursuing this lawsuit. The Class Period is the period from January 2004 to the present.**

38.     Excluded from the Class are Defendants, employees and agents of the Defendants, members of the immediate family of the Defendants, any entity in which Defendants Samandarov, Group Americar and BC Leasing have a controlling interest, and Defendants Group Americar and BC Leasing legal representatives, heirs, successors or assigns.

39.     This action has been brought and is properly maintainable as a class action, pursuant to Federal Rules of Civil Procedure 23(a)(1)-(4), 23(b)(1), (2) or (3), and case law thereunder.

40.     **Numerosity of the Class** - Fed. R. Civ. P. 23(a)(1):  Although the exact number of class members cannot be ascertained, they are so numerous and geographically dispersed that joinder of all class members is impracticable.  The precise number of class members and their addresses is unknown to Plaintiffs but can be readily determined from inspection of records maintained by Defendant Americar.  Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

41.     **Existence and Predominance of Common Questions of Fact and Law** – Fed. R. Civ. P. 23(a)(2); 23(b)(3):  There are common questions of law and fact involved herein which predominate over any questions affecting only individual members of the class.  The common question of law and fact include, but are not limited to the following:

a.  whether Defendants violated <u>Section 349 of the New York General Business Law</u> ("Gen. Bus. L.") in that they engaged in deceptive acts or practices in the conduct of their business;

b.  whether Defendants violated <u>Gen. Bus. L., Section 350</u> by engaging in false advertising in the conduct of their businesses;

c.  whether Defendants committed fraud by advertising and selling their subscription agreements under the guise that those subscriptions could be transferred back to Defendants or third parties;

d.  whether Plaintiffs are entitled to rescission of their subscription agreements due to Defendants' failure to offer relevant disclosures as required under New York Franchise Sales Act;

e.  whether Defendants were unjustly enriched at the expense of Plaintiffs and the Class;

f.  whether Defendants refused to reimburse the subscribers when they illegally confiscated their cars and cancelled their subscription agreements;

g.  whether Defendants acted illegally, as alleged herein;

h.  whether Plaintiffs and the Class are entitled to restitution of all monies acquired by Defendants from Plaintiffs and the Class and the general public as a result of Defendants' unlawful conduct, and, if so, the appropriate measure of damages;

i.  the appropriate form of injunctive, declaratory and monetary relief.

42.  **Typicality** - Fed. R. Civ. P. 23(a)(3):  Plaintiffs' claims are typical of those of the Class in that Plaintiffs are members of the Class and have no known interest that are antagonistic to or contrary to the interest of the Class.

43.  **<u>Adequacy</u>** - Fed. R. Civ. P. 23(a)(4):  Plaintiffs will fairly and adequately protect the interest of the members of the class because their interests do not conflict with the interests of the Class members they seek to represent.  Plaintiffs have retained competent counsel experienced in class litigation and intend to prosecute this action vigorously.

44.  **<u>Superiority</u>** - Fed. R. Civ. P. 23(b)(3):  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Plaintiffs know of no difficulty to be encountered in the management of this action which would preclude its maintenance as a class action.  Furthermore, since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impracticable for the class members to seek redress individually for the wrongs they have suffered.

45.  In the alternative, the Class may be certified under the provisions of Fed. R. Civ. P. 23(b)(1) and/or 23(b)(2) because:

    a.  the prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendant;

    b.  the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

    c.  Defendants has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

**Violations of Racketeer Influenced Corrupt Organizations Act, Sections 1962(c) and (d).**

46.    Defendants have violated 18 U.S.C. §§ 1962(c) and (d) by conspiring and committing multiple acts of mail fraud, and wire fraud in a continuing pattern of racketeering.

47.    During the relevant period, Defendants Samandarov, American, and BC Leasing were involved in a scheme, pursuant to which they encouraged their users – the subscribers - and in particular, Plaintiffs within, to enter into the subscription agreements with Defendants.

48.    Throughout the Class Period, Defendants were making false representation to the public at large that the subscription agreements offered by Defendants would offer various substantive rights to their subscribers as agreed.    Throughout the Class Period, Defendants failed to offer relevant financial disclosures to the subscribers at large as required under New York Franchise Sales Act.

49.    These representation misled the Plaintiffs and Plaintiffs' class in believing that they would not be disadvantaged and their lawful interests would not be harmed if they entered into the subscription agreements with Defendants.    In practice, however, Defendants Samandarov, American, and BC Leasing, unbeknownst to the subscribers and without their consent, with intention to defraud, frequently transferred the titles to the cars purchased by the subscribes under the name of Defendant BC Leasing.

50.    Defendants thereafter engaged in a fraudulent scheme whereby they confiscated the cars purchased by subscribers, as a result of forging the title and registration documents, causing many subscribers to lose their ability to service customers referred by Defendant American and utilize their subscription agreements to their benefit.

51.    Even if Defendants did not confiscate the subscribers' cars, the subscribers whose titles were transferred to Defendant BC Leasing would live in constant fear that their cars could be confiscated by Defendants at any point.  These subscribers were also deprived of a possibility of ever owning their vehicles, or of leaving Defendant American to work for a different car service company or on their own.

52.    By engaging in the activity stated above, Defendant American and its principals committed mail fraud within the meaning of 18 U.S.C. §§ 1341 and 1343, respectively.

53.    In those cases when the subscribers lost their rights under the subscription agreement with Defendants, the subscribers' interests were not protected, as neither Defendant Samandarov nor the creditors who financed the subscription of agreements reimbursed the subscribers for the payments made.

54.    When the subscribers turned to Defendant Samandarov for a refund of their money, including the subscription fee, Defendants Samandarov and Group American, with the specific intent to defraud the public at large, failed to advise their subscribers of their decision to deny a refund but advised them to wait for their decision for extended periods of time.  As a result, the subscribers continued to make the payments to the creditors for the subscription agreements as well as cars that they no longer owned.

55.    By engaging in the activity stated above, Defendant American and its principals committed additional counts of mail and wire fraud within the meaning of 18 U.S.C. §§ 1341 and 1343, respectively.

56.    Upon information and belief, by transmitting Plaintiffs and Plaintiffs Class's money to Defendant American and Defendant BC Leasing, Defendant Samandarov was involved in the transportation or transmission of funds that were known to the Defendant Samandarov

to have been derived from a criminal offense and/or were intended to be used to promote or support unlawful activity.

57.    By engaging in the activity stated above, Defendant Samandarov committed additional counts of mail and wire fraud within the meaning of 18 U.S.C. §§ 1341 and 1343, respectively.

58.    Furthermore, Defendant Samandarov acted unlawfully when he transferred the titles to the cars purchased by his subscribers to Defendant BC Leasing.  In addition, Defendant Samandarov also acted unlawfully when he forced his subscribers and in particular, the Plaintiffs within and the members of Plaintiffs' Class, to purchase cars from Defendants and other subscribers.    Specifically, Defendant Samandarov was making false representation to his franchisees at the time when they were entering into the franchise agreements.  This misrepresentation misled the Plaintiffs and Plaintiffs' class in believing that they would not be disadvantaged and their lawful interests would not be harmed if they became subscribers of Defendant Americar.

59.    Finally, Defendant BC Leasing is a financial institution under 15 U.S.C. § 1693a(8), and Plaintiffs and Class Members are "consumers" under 15 U.S.C. § 1693a(5). (check)

60.    By illegally transferring the titles from the subscribers to Defendant BC Leasing, each of the Defendants committed bank fraud within the meaning of 18 U.S.C. § 1344.

61.    Defendants knew that their acts, as described herein, constituted a pattern of racketeering activity.

### DEFENDANT SAMANDAROV'S OTHER ILLEGAL PRACTICES

62. Upon information and belief, former employees of defendant Group Americar have also disclosed that Defendant Americar's management was aware of their illegal practices and were even boasting that "FBI will never catch us".

63. The aforesaid scheme was devised by Defendant Samandarov and others to transfer the subscriptions from one franchisee to the next and make their assignors continue to pay for their subscriptions.

64. By engaging in the aforesaid scheme, Defendants have violated Section One of the Sherman Act by conspiring to conceal their fraudulent activities from Plaintiffs and consumers at large.

65. The scheme perpetrated by Defendants also constituted mail fraud and wire fraud and violates 18 U.S.C. §§ 1341 and 1343, respectively.

66. Plaintiffs and members of Plaintiffs' class have sustained economic injuries in the amount to be determined at trial as a result of the fraudulent practices of Defendants set forth above.

## PLAINTIFF TADEUSZ KOWALEWSKI'S EXPERIENCE

67. On or about May 26, 2006, Plaintiff Tadeusz Kowalewski ("Kowalewski") entered into a Subscription Agreement with Defendant Group Americar.

68. Defendants Samandarov, Group Americar and BC Leasing (collectively, "Defendants"), with intent to defraud, sold a 2003 Lincoln Towncar to Kowalewski for $17,850. This amount was to be paid by Kowalewski in the form of 105 weekly payments of $170.00, which were deducted by Defendants from Kowalewski paychecks as "Car Loan" payments.

69.    Defendants deducted the total amount of $6,970.00 from Kowalewski's pay checks at which point they took the car from Kowalewski by force, even though he did not default on a single payment.

70.    Defendants' associates stole the license plates from Kowalewski's 2003 Lincoln Towncar.  Defendants then admitted to the possession of the license plates in a letter to Kowalewski.   As a result of the theft of the license plates, Defendants prevented Kowalewski from paying his subscription agreement fee pursuant to the Subscription Agreement and caused Kowalewski to lose a month worth of income.

71.    Defendants never registered Kowalewski's 2003 Lincoln Towncar with the Taxi and Limousine Commission of New York.

72.    Defendants failed to pay car insurance premiums to Hereford Insurance Company ("Hereford") on Kowalewski's 2003 Lincoln Towncar, even though they deducted $130 in insurance premiums from Kowalewski's weekly paychecks for a total of $2,287.76. When Kowalewski contacted Hereford to cancel his policy, his was informed that premium payments were never made and asked to pay an outstanding amount of $2,600.

73.    Defendants Samandarov and Group Americar deducted a monthly payment of $202.84 for "collision insurance" with West Point Surety for a total of $2,914.08.  However, the insurance policy was not under Kowalewski's name.

### PLAINTIFF OLEG LOGUNOVSKI'S EXPERIENCE

74.    On or about July 14, 2004, Plaintiff, OLEG LOGUNOVSKI ("Logunovski"), entered into a Subscription Agreement with Defendant Group Americar.

75.    On or about July 14, 2004, Logunovski borrowed $9,096.00 from League of Mutual Taxi Owners ("LOMTO") towards the payment due under his subscription agreement with

Defendant Group American. On the same day, LOMTO issued a check to Logunovksi in the amount of approximately $9,096.00, which Logunovksi delievered to Defendant American. Logunovski, however, has not been repaying the loan to LOMTO. Instead, Defendants Samandarov and American have been deducting $73.00 from Logunovski's weekly paycheck, under a category "LOMTO Loan," as a repayment of his LOMTO loan.

76.    In addition, Defendants Samandarov and Group American also were in the practice of deducting a "NEXTEL Phone" fee for the use of the NEXTEL radio from Logunovski's weekly paychecks, even though the $73.00 deduction already covers the repayment of the loan taken for the use of the NEXTEL radio.

77.    Additionally, since approximately October 2006, Defendants Samandarov and Group American, without any warning, began to withhold a "Control Fund" fee in the amount of $15.00 from Logunovski's weekly paychecks.

78.    With the intent to defraud Logunovski, Defendants Samandarov and Group American suggested that he should be a guarantor on a loan taken by Dmitry Ginsburg from the Bank of America for the purchase of a 2001 Lincoln, VIN # 1LNHM81W91Y680231. Mr. Ginsburg bought this car to be used as a cab in conjunction with his agreement with Defendant American for the use of their cab radio. On or about July 21, 2005, approximately after one month of Mr. Ginsburg's use of the car, Defendant Samandarov took away the car from Mr. Ginsburg. Defendant Samandarov gave the car to another American driver to use for approximately one year, after which Defendant Samandarov sold the car. Defendant Samandarov had Logunovski pay the balance of $5,657.96 between the resale price and the outstanding Bank of America loan amount, including $634.80 in interest payments. Towards this end, Defendant Samandarov deducted

$133.42 from Logunovski's weekly paychecks.  The monthly payments due to the Bank of America were $382.02, whereas Defendants Samandarov and Group Americar were illegally withholding over $534.00 per month from Logunovski's paychecks.  Moreover, Defendant Samandarov was not making the loan payments to the Bank of America, and the Bank of America contacted Logunovski warning him as a guarantor that his debt would be transferred to a collections agency for non-payment.  Logunovski contacted Defendant Samandarov and threatened him to report his conduct to the authorities, after which Defendant Samandarov made a payment to the Bank of America.

79.   Logunovski also was coerced by defendant Samandarov to be a guarantor on a loan taken by Plaintiff Nicholas Klimiuk from Ford Credit for the purchase of a 2002 Lincoln, VIN # 1LNHM84W12Y670113, which was bought on or about December 9, 2004.   Mr. Klimiuk was making payments to Ford Credit.  On or about July 21, 2005, the same day he took away Mr. Ginsburg's car, Defendant Samandarov also took away Mr. Klimiuk's car by towing it away from Kings Highway (on the corner with West 6th Street) in Brooklyn, New York, and changing a door key combination (see also ¶ 86 infra). Defendant Samandarov gave Mr. Klimiuk's car to another driver, who used that car until approximately March 2006, after which Defendant Samandarov wanted Logunovski to take both Mr. Klimiuk and Mr. Ginsburg's cars.  Logunovski refused.  Defendant Samandarov then withheld $2,000 for two months from Logunovski's paychecks before Defendant Samandarov sold Mr. Klimiuk's car for approximately $10,500.  Defendant Samandarov, however, did not repay an outstanding balance on the Ford Credit loan, and Ford Credit contacted Logunovksi, warning him as a guarantor that his debt will be transferred to a collections agency for non-payment.  Logunovski approached Defendant

Samandarov and threatened him to report his conduct to the authorities, after which Defendant Samandarov made a payment of $6,507.89 to Ford Credit.

## PLAINTIFF NICHOLAS KLIMIUK EXPERIENCE

80.   On or about December 7, 2004, Plaintiff, Nicholas Klimiuk ("Klimiuk"), entered into a Subscription Agreement with Defendant Group Americar.

81.   On or about December 7, 2004, Klimiuk borrowed approximately $10,096.00 from LOMTO, at 9.25 percent, towards the payment due under his subscription agreement with Defendant Group Americar.  On the same day, LOMTO issued a check to Klimiuk in the amount of approximately $10,096.00, which Klimiuk delivered to Defendant Americar. Klimiuk, however, subsequently did not repay his loan directly to LOMTO.  Instead, Defendants Samandarov and Americar withheld approximately $82.00 from Klimiuk's weekly paycheck, under a category "LOMTO Loan," as a repayment of his LOMTO loan.

82.   Defendants Samandarov and Group Americar directed Klimiuk to Tower Auto Group, Inc. ("Tower") located in Brooklyn, New York, for a purchase of a car to be used for work at Group Americar.  Upon information and belief, Tower has had an agreement with Defendant Group Americar, pursuant to which Defendant Americar has referred its drivers to buy cars from Tower and Tower has paid commission to Defendant Americar on the vehicles the Americar drivers have purchased.  Initially, Tower quoted Klimiuk $17,900 as a car purchase price, which subsequently was increased to $21,900.00 to account for the Americar's commission.

83.   Logunovski agreed to help Klimiuk with a purchase of a car to be used for work at Group Americar and a car loan.  Towards this end, on or about December 9, 2004, Klimiuk and Logunovski purchased a 2002 Lincoln, VIN # 1LNHM84W12Y670113 ("Klimiuk's

vehicle"), from Popular Ford Sales, Inc., via Tower.  The purchase price was $25,928.48, including taxes and fees.  The original certificate of title was issued in Logunovski's name.

84.   Logunovski was a guarantor/co-signor on a loan Klimiuk took from Ford Credit in the amount of $17,638.88 (see also ¶ 79 supra).  Klimiuk paid Ford Credit $822.02 per month in car loan payments.

85.   Defendants Samandarov, Group American and BC Leasing offered Klimiuk to obtain car insurance in the name of BC Leasing so that Klimiuk could save money on a group insurance rate.  Klimiuk agreed, and Defendant BC Leasing obtained car insurance from Hereford Insurance Company on Klimiuk's vehicle listing BC Leasing Corp. as the insured.

86.   On or about July 21, 2005, Defendants Samandarov and Group American took away Klimiuk's vehicle by towing it away while it was parked on Kings Highway and West 6th Street in Brooklyn, New York, and changing a door-key combination (see also ¶ 79 supra).  When Klimiuk approached Defendant Samandarov and his assistant/manager Arkadiy Kogan requesting that his car be returned, he was told by Defendant Samandarov and Mr. Kogan that Defendants changed the title to his vehicle to Defendant BC Leasing and, hence, Klimiuk had no recourse against the Defendants.  Klimiuk reported the incident to the police, but the police could not do anything since the car was registered to Defendant BC Leasing.  Klimiuk received his last paycheck, check # 003199, from Defendant Group American in the amount of $10.00 on July 15, 2005.

87.   Klimiuk informed Ford Credit that his vehicle was taken away by Defendants Samandarov and Group American and stopped paying his monthly loan payments.

Defendants Samandarov and Group American, however, did not make regular payments to Ford Credit, and, in April 2006, Klimiuk received from Ford Credit a Notice of Default and Intent to Repossess regarding overdue loan payments for the months of March and April 2006.    Klimiuk received a similar notice from LOMTO since Defendants Samandarov and Group Americar did not make timely payments to LOMTO either.

### PLAINTIFF STANISLAW PUCHALA'S EXPERIENCE

88.    In or about July 2005, STANISLAW PUCHALA ("PUCHALA") entered into a Subscription Agreement with Defendant Group Americar.  The Subscription Agreement was materially different from the one filed with the Attorney General's Office and was not signed by a representative from Defendant Group Americar.    Puchala later approached Defendant Samandarov pointing out the omission, and, on or about September 1, 2006, Defendant Samandarov and Puchala signed another copy of the same Subscription Agreement.  As a payment under the Subscription Agreement, Defendants withhold $82.00, in the form of "Franchise Fee," from Puchala's weekly paychecks.

89.    In or about July 2005, Logunovski agreed to help Puchala with the purchase of a car to be used for work at Group Americar and a loan to buy the car.    Towards this end, Logunovski and Puchala purchased a 2001 Lincoln, VIN # 1LNHM85W11Y630045, from Cox National LLC, Bronx, New York, paying a down payment of $2,000 and borrowing $21,786.96 from HSBC bank as a car loan.  The original certificate of title was issued in Logunovski's name.

90.    Defendants BC Leasing and American recommended Puchala to register his car under BC Leasing and obtain car insurance in the name of BC Leasing so that Puchala could save money on his car insurance.  Puchala agreed, and Defendant BC Leasing registered the

car under its name and obtain car insurance from Hereford Insurance Company listing BC Leasing Corp. as the insured.  Neither Puchala nor Logunovski signed any papers to enable Defendant BC Leasing to obtain car and TLC registration as well as car insurance in its name.  For this favor, Defendant Americar charged Puchala $5,000 ($1,000 as a down payment and $4,000 in the form of an "Americar Loan" withheld from Puchala's weekly paychecks), even though Puchala made and continues to make all payments for the car registration, TLC payments, car insurance premium payments (withheld from his weekly paychecks in the amount of $160.00), car loan premium payments, and car repairs.  In or about February 2007, Puchala approached Defendants BC Leasing and Americar requesting that all registration and car insurance documents be changed to his name.  Defendants BC Leasing and Americar refused to do so.

91.    Upon information and belief, in or about March 2007, Defendant Samandarov called a meeting of the Americar drivers, the subscribers.  At the meeting, Defendant Samandarov announced that the subscribers can only use their radios while they work for Defendant Americar; however, they would not be able to sell or transfer their rights under their subscriptions upon their departure from the employ of Defendant Americar.

## FIRST CAUSE OF ACTION

### (For Violations of Racketeer Influenced Corrupt Organizations Act Section 1962 (c))

92.    Plaintiffs and other members of the Class repeat and re-allege each and every allegation set forth in paragraphs "1" through "91" as it fully set forth herein.

93.    This cause of action is brought against each of the Defendants (except Defendant BC LEASING, INC.) on behalf of the Plaintiffs and the other members of the Class and arises under 18 U.S.C. § 1962(c) and (d) of R.I.C.O.

94.    At all relevant times during the Class Action Period, Defendant BC Leasing is a for-profit entity and constitutes an "enterprise" as that term is defined in 18 U.S.C. § 1961(4), which engages in, and the activities of which affect, interstate commerce.

95.    At all relevant times during the Class Action Period, each of the Defendants (except for Defendant BC Leasing) was a "person" as that term is defined in 18 U.S.C. § 1961 (3), as each of the Defendants was "capable of holding a legal or beneficial interest in property".

96.    Each of the Defendants (except for Defendant BC Leasing) conducted or participated, directly or indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

97.    Each of the Defendants (except for Defendant BC Leasing) committed predicate offenses under Section 1961(1)(B), to wit, numerous counts of bank fraud under 18 U.S.C. § 1344, mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343 and a violation of 18 U.S.C. § 1960 as described above.

98.    Each of the Defendants (except Defendant BC Leasing) engaged in a pattern of racketeering activity as defined by 18 U.S.C. § 1961 in that they conspired to maintain a pattern and/or practice of selling cars to their subscribers at inflated prices, making them sign bogus applications for transfers of title to the cars purchased by the subscribers to Defendant BC Leasing, without any intent of issuing refunds for said cars and with the intent to improperly increase their profits at the expense of Plaintiffs and the Class herein.

99.     The pattern of racketeering activity referred to above consisted of a variety of schemes which all had the same specific intent, namely to use fraudulent means and unlawful influence to enrich Defendants at the expense of Plaintiffs and other members of the Class.

100.    These acts of racketeering activity were continuous and related to one another by virtue of common participants, to wit each of the Defendants (except for Defendant BC Leasing); the common victims: Defendant American's subscribers and the common purpose and common result of improperly enriching Defendants' at the expense of the Plaintiffs and other members of the Class.   Because Defendants performed more than two acts of racketeering activity that were continuous, related and caused substantial injury to Plaintiffs and other members of the Class, these acts constituted a pattern of racketeering activity within the meaning of R.I.C.O, 18 U.S.C. § 1961(5).

101.    The unlawful pattern of racketeering activity has been committed through the vehicle of the enterprise, to wit, Defendant BC Leasing, during the Class Period.  The enterprise had an ascertainable decision-making structure by utilizing the management organization of Defendant BC Leasing.

102.    Defendant BC Leasing operated and managed the enterprise and also conducted a legitimate business activity, to wit, leasing their cars to customers at large.  Throughout the relevant periods, Defendants Americar and Samandarov conducted the enterprise through a pattern of racketeering activity within the meaning of R.I.C.O, 18 U.S.C. § 1961(5) and § 1962(c), in violation of R.I.C.O, 18 U.S.C. § 1962(c).

103.    Defendants have (a) used or invested the proceeds of the income derived from the pattern of racketeering activity to establish, operate and acquire an interest in any and/or all of the

companies constituting the enterprise; (b) acquired an interest or control of the enterprise through a pattern of racketeering activity; and (c) conducted the affairs of that enterprise through a pattern of racketeering activity.

104.    Each of the Defendants (except Defendant BC Leasing) also conspired to violate 18 U.S.C. § 1962(a), in violation of 18 U.S.C. § 1962(d).

105.    Plaintiffs and other members of the Class suffered damages, which were the direct, foreseeable, and proximate result of the Defendants' materially misleading acts and practices.

106.    In addition, Defendants' deceptive practices are likely to continue to deceive thousands of persons who will also be injured thereby.

107.    By virtue of the foregoing, Plaintiffs and the Members of the Class have been damaged, jointly and severally, for treble damages in the amount to be ascertained at trial.

<u>**SECOND CAUSE OF ACTION**</u>

**(DECEPTIVE TRADE PRACTICES BY DEFENDANTS
SAMANDAROV AND AMERICAR)**

108.    That Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs "1" through "107" as it fully set forth herein.

109.    Defendant Samandarov and Group American represented to subscribers in Group American's Franchise Agreement that Group American does not receive any payments from any person either offering financing or arranging for prospective subscribers.

110.    That Defendants' misrepresentations are misleading in a material respect since in practice Defendant American continuously take over collection efforts on behalf of third party creditors who offer financing to their current subscribers.

111.    Defendants SAMANDAROV AND AMERICAR deduct the premiums for LOMTO for loans that were issued to subscribers for the purchase of the radio by third parties including but not limited to LOMTO and other creditors.

112.    In addition, Defendant SAMANDAROV AND AMERICAR had continuously deducted the premiums for loans that were issued to subscribers for the purchase of their cards by third parties.

113.    These practices constitute a deceptive trade practice under the provision of Gen. Bus. L., Section 349.

114.    Upon information and belief, Defendants were also involved in misleading advertising practices wherein they informed their current and prospective subscribers that they would be able to sell their subscriptions back to Defendants for $15,000.  Such practices also constitute a deceptive trade practice under the provision of Gen. Bus. L., Section 349.

115.    Gen. Bus. L., § 349(h) provides for a private right of action by any person who has been injured by a violation of Gen. Bus. L. § 349(a).

116.    Defendants' deceptive practices have deceived Plaintiffs and other members of Plaintiff's Class.  In addition, Defendant Americar's deceptive practices are likely to continue to deceive thousands of persons who will also be injured thereby.

117.    Upon information and belief, Plaintiffs and members of the Plaintiffs' Class have suffered damages, which were the direct, foreseeable, and proximate result of the Defendants' materially misleading acts and practices.

118.    By virtue of the foregoing, Plaintiffs and members of the Plaintiffs' Class have been damaged, jointly and severally, in the amount to be ascertained at trial.

### THIRD CAUSE OF ACTION

**FRAUDULENT INDUCEMENT**
**(MISREPRESENTATIONS REGARDING THE SALE OF THE RADIO BY**
**DEFENDANTS AMERICAR AND SAMANDAROV)**

119.    That Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs "1"

through "118" as it fully set forth herein.

120.    To the extent that the Plaintiffs and the other Class members are deemed by Defendants

not to be entitled to broad rights to sell their subscriptions, Defendants, knowingly or

recklessly, made false and misleading representations by falsely representing that their

subscriptions could be sold without any restrictions to prospective franchisees.  These

misrepresentations are material to the Plaintiffs and the other members of the Class

because they caused them to become franchisees of Defendant Americar, provide their

sensitive personal and banking information, and otherwise abide by their Franchise

Agreement.

121.    Defendants made these false representations and omissions with the knowledge that they

were false and misleading and with the intent that they were relied upon by persons who

were deciding whether to become franchisees of Defendant Americar and abide by their

franchise agreement.

122.    The Plaintiffs and the other members of Plaintiff's Class believed these representations to

be true and relied on Defendants' false representations when making their decision to

become franchisees.  The Plaintiffs and the other class members have thereby been

injured because they have not been provided with the rights and privileges granted to

franchisees under New York Franchise Sales Act.  The Plaintiffs and the other members

of the Class were led to expect, and reasonably believed, they were entitled to the rights

and privileges granted to franchisees under the New York Franchise Sales Act.  In practice, however, the User Agreement has not afforded customers said rights and privileges.

123.   By virtue of the foregoing, Plaintiffs have been damaged, jointly and severally, for treble damages in the amount to be ascertained at trial.

**FOURTH CAUSE OF ACTION**
**(BREACH OF CONTRACT BY DEFENDANTS AMERICAR AND SAMANDAROV)**

124.   Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs "1" through "123" as it fully set forth herein.

125.   Pursuant to the general policy of Defendant American, the Plaintiffs and the other members of the Class, individually entered into a contract with Defendant Americar entitled "Franchise Agreement".

126.   The Franchise Agreement is lawful, enforceable, and binding upon the parties as it satisfies all the elements necessary for formation of a valid contract.

127.   The Plaintiffs and the other Class members have duly executed the contract by agreeing to it and have performed it by providing their personal and billing information to Defendant Americar.

128.   The Franchise Agreement defined the rights and obligations of Defendant Americar and each respective customer.  The Franchise Agreement specifically allowed their subscribers to assign their subscriptions to third parties. Under the Subscription Agreement offered to Plaintiffs and the members of the Plaintiffs' class, Defendant Americar's fee upon any assignment of a Subscription to another driver is ten percent

(10%) of the purchase price plus any amounts then due to the company from the Subscriber.

129.    Defendants usurp all privileges and control in violation of their Franchise Agreement that current subscribers have by taking away their cars, registering their cars under BC Leasing, made their subscribers pay for other subscribers' loans to LOMTO, Bank of America and other creditors.

130.    Defendants breached that Franchise Agreement by not providing to the customers, in particular the Plaintiffs and other Class members, rights and privileges they have contracted for.

131.    By virtue of the foregoing, Plaintiffs have been damaged, jointly and severally, for damages in the amount to be ascertained at trial.

## FIFTH CAUSE OF ACTION
### (FRAUD BY DEFENDANTS)

132.    That plaintiffs repeat and re-allege each and every allegation set forth in paragraphs "1" through "131" as it fully set forth herein.

133.    That Defendants committed fraud by selling franchise agreements wherein they represented that defendants do not receive any payment from any person either offering financing to, or arranging financing for a prospective subscriber.  Notwithstanding these fraudulent misrepresentations, defendants in fact reaped benefits by engaging in a fraudulent scheme whereby they sold the cars to their subscribers at an inflated price, and reaped additional illegal profits when they arranged for a financing of the subscription fee

and the purchase price of the car with creditors such as League of Mutual Taxi Owners, Popular Ford Sales, Inc. and others.

134.     In addition, Defendants usurp all privileges and control in violation of their Franchise Agreement that current subscribers have by taking away their cars, registering their cars under BC Leasing, made their subscribers pay for other subscribers' loans to LOMTO, Bank of America and other creditors.

135.     Defendants' practices have deceived Plaintiffs and other members of plaintiff's Class.  In addition, Defendant Essex's deceptive practices are likely to continue to deceive thousands of persons who will also be injured thereby.

136.     Upon information and belief, Plaintiffs and their Class suffered damages, which were the direct, foreseeable, and proximate result of the defendants' materially misleading acts and practices.

137.     By virtue of the foregoing, Plaintiffs and their Class have been damaged, jointly and severally, in the amount to be ascertained at trial.

## DEMAND FOR JURY TRIAL

138.     Plaintiffs hereby demand a trial by jury on all causes of action so triable.


**WHEREFORE**, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiffs demand a trial by jury and judgment against all defendants as follows:

a.     Compensatory damages in an amount to be determined at trial, together with interest;

b.     Punitive damages in an amount to be determined at trial;

c.    Treble damages pursuant to RICO;

d.    For an order awarding Plaintiffs and the Class restitution of all monies

acquired by Defendants from Plaintiffs, the Class, and the general public, as a

result of Defendant's wrongful practices described above;

e.    For an order awarding Plaintiff and the Class pre-judgment and post-judgment

interest, as well as their reasonable attorneys' and experts' witness fees and

other costs;

f.    For an order imposing a constructive trust upon all monies and assets

Defendants have acquired from Plaintiffs and the Class as a result of

Defendant's unlawful, unfair, fraudulent and deceptive practices;

g.    For an order awarding Plaintiffs and the Class equitable and declaratory relief,

as the Court deems appropriate; and

h.    For an order awarding such other and further relief as this Court may deem

just and proper.

Dated:   New York, New York
         July 23, 2007

                                    _____/s/_____
                                    Marina Trubitsky, Esq. (MT-9371)
                                    MARINA TRUBITSKY
                                    & ASSOCIATES, PLLC
                                    *Attorneys for Plaintiffs*
                                    11 Broadway, Suite 861
                                    New York, New York  10004
                                    (212) 732-7707