UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------

TADEUSZ KOWALEWSKI, NICHOLAS
KLIMIUK, OLEG LOGUNOVSKI and
STANISLAW PUCHALA, individually and on behalf
of others similarly situated,

                          Plaintiffs,

v.

RUDOLF SAMANDAROV a/k/a RUDY
SAMANDAROV, GROUP AMERICAR
TRANSPORTATION LLC, BC LEASING, CORP.,
and individual partners of corporate defendants,
                          Defendants.

------------------------------------

Civil Action No. 1:07-cv-06706
(RJS) (GWG)

MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFFS'
OPPOSITION TO
DEFENDANTS' MOTION TO
DISMISS THE COMPLAINT

       This memorandum of law is submitted on behalf of Plaintiffs Tadeusz Kowalewski ("Kowalewski"), Nicholas Klimiuk ("Klimiuk"), Oleg Logunovski ("Logunovski"), and Stanislaw Puchala ("Puchala"), (collectively "Plaintiffs") in opposition to Defendants' motion to dismiss the complaint based upon the allegation that the parties agreed to submit disputes between them by arbitration ("Defendants' Motion").

## STATEMENT OF FACTS

       1.    All Plaintiffs in this action have worked as limousine drivers for Defendant Group Americar Transportation LLC ("Group Americar"), and Defendants in their Motion do not dispute this fact. Logunovski started working for Group Americar in July 2004 (see Declaration of Oleg Logunovski, dated November 21, 2007 ("Logunovski Decl."), ¶ 1). At that time, Logunovski did not sign any contracts with Group Americar (see id.). Approximately, one year later, in 2005, he was summoned into the office of Defendant RUDOLF SAMANDAROV a/k/a RUDY SAMANDAROV ("Samandarov") who demanded that Logunovski sign a contract and threatened him that otherwise he would be fired (see id. ¶2). Samandarov did not explain to Logunovski any of the terms of the contract nor allowed him to

read the contract. After Logunovski signed the document, Samandarov inserted a date on the first page of the Subscription Agreement which approximately corresponded to the date when he started working at Group Americar. (A true and correct copy of the Subscription Agreement signed by Logunovski is attached to Logunovski Decl. as Exhibit "A".) Significantly, the Subscription Agreement in possession of Logunovski is different from the Subscription Agreement relied on by Defendants (see Exhibit "D" to Affidavit of Rudolf Samandarov, dated October 25, 2007 ("Samandarov Aff.")). Specifically, the Subscription Agreement relied on by Defendants is signed by Arkady Kogan, whereas the Subscription Agreement in Logunovski's possession is signed by Samandarov (*cf.* Exhibit "A" to Logunovski Decl.).

2.   Klimiuk and Kowalewski were also forced to sign the Subscription Agreement without an opportunity to read it first (see Declaration of Klimiuk, dated November 21, 2007 ("Klimiuk Decl."), ¶ 1; see also Declaration of Kowalewski, dated November 21, 2007 ("Kowalewski Decl."), ¶ 2). Klimiuk never received a copy of the Subscription Agreement he signed (Klimiuk Decl. ¶ 1). Additionally, the Subscription Agreement in Kowalewski's possession (Exhibit "A" to Kowalewski Decl.) is different from the Subscription Agreement relied on by Defendants (*cf.* Exhibit "C" to Samandarov Aff.").

3.   As part of their work for Group Americar, on a regular basis, Plaintiffs have driven Group Americar customers between New York and New Jersey, New York and Connecticut, and New York and Pennsylvania (see, e.g., Logunovski Decl. ¶ 3). Defendants in their Motion do not dispute this fact.

4.   Samandarov closely controls the manner of Group Americar drivers' job performance. Specifically, he enforces a very particular dress code, demands that Group Americar drivers display Group Americar's name and logo when on duty, drive Lincoln Town

Car or Cadillac purchased only at Popular Ford Sales, Inc., and prohibits the drivers to have any other customers aside from Group Americar's clients (see Logunovski Decl. ¶¶ 4-6; Kowalewski Decl. ¶ 4-6; Klimiuk Decl. ¶ 3-5). Additionally, Samandarov and Group Americar provide certain fringe benefits to their drivers, such as the Voucher Fund that accumulates $1 per trip for each driver and a $10,000 bonus to the top ten Group Americar drivers (see Logunovski Decl. ¶ 7 and Klimiuk Decl. ¶ 6).

5.  Samandarov personally assigns pre-assigned jobs and Out-of-Town jobs ("OT jobs") to specific drivers (see Logunovksi Decl. ¶¶ 6-7) and can re-assign a job from one driver to another (see Kowalewski Decl. ¶ 7 and Exhibit "D" to Kowalewski Decl.), thereby controlling each driver's earnings. Group Americar does not employ a blind assignment system on "the first-come-first-served" basis. Samandarov has an unbridled authority to terminate any driver at any point without any explanation and confiscate his or her car or license plates (see Logunovski Decl. ¶¶ 14-15, Klimiuk Decl. ¶ 11, Kowalewski Decl. ¶ 10; see also Class Action Complaint ¶¶ 68-73, 81-87 attached to Samandarov Aff. as Exhibit "A".). Samandarov frequently registers Group Americar drivers' cars under Defendant BC Leasing Corporation, often without their knowledge (see, e.g., Class Action Complaint ¶ 86).

6.  Logunovski was a guarantor on the loans taken by Klimiuk and another driver, Dmitry Ginsburg, for the purchase of their cars which were then confiscated by Samandarov. After Samandarov sold the two confiscated vehicles, he made Logunovski repay an outstanding balance on both loans for the two vehicles, over $8,000 combined (see Logunovski Decl. ¶¶ 14-15).

7.  Samandarov imposes and withholds numerous fees and deductions from Group Americar drivers' weekly paychecks, some of them are named as follows: Control Fund fee,

3

car-wash fee, Dues, LOMTO Loan, Nextel Phone, Voucher Adjustment, Personal Loan, Security, to name just a few (see Logunovski Decl. ¶ 11 and Exhibit "B" to Logunovski Decl.).

8.  Samandarov controls a so-called Security Council which is an internal quasi-judicial body that enforces Samandarov's many regulations.  The Security Council holds hearings and finds drivers "guilty" or "not guilty" of "major" and "minor" offenses and keeps record of the offenses (see Logunovski Decl. ¶ 9, Kowalewski Decl. ¶ 9, Klimiuk Decl. ¶ 10).

## ARGUMENT

### Plaintiffs Did Not Agree to Arbitrate Their Claims.

9.  Defendants argue that Plaintiffs agreed to arbitrate their claims pursuant to an arbitration clause in the Subscription Agreement (see Memorandum of Law by Eric B. Kaviar, dated October 26, 2007 ("Kaviar Memorandum" at 7).  First, Defendants failed to produce a Subscription Agreement allegedly signed by Nicholas Klimiuk (see Samandarov Aff.). Klimiuk is not in possession of a copy of the contract he signed since it was never given to him (see Klimiuk Decl. ¶ 1).  Therefore, with respect to Klimiuk, Defendants cannot claim that he signed any documents that contained arbitration clause.

10. Second, it is well settled that ordinary contract principles apply to determine whether the parties have agreed to arbitrate a particular dispute. See, e.g., Arakawa v. Japan Network Group, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) (citation omitted).  A party has to make the "disturbing showing of unfairness, undue oppression or unconscionability necessary to void a contract on the basis that it is a contract of adhesion." See id. (citing Klos v. Polskie Linie Lotnicze, 133 F.3d 164, 169 (2d Cir. 1997) (internal quotation marks omitted)).  "Factors to be considered in determining whether a contract of adhesion is unconscionable include whether the 'coerced' party was on notice of the offending provision, whether the 'coercing'

4

party achieved agreement by fraud or overreaching; and whether any alternatives existed for the 'coerced' party. Klos 133 F.3d at 169 (citing Carnival Cruise Lines, 499 U.S. at 585, 594-95; Pitasi v. Stratton Corp., 968 F.2d 1558, 1562-63 (2d Cir. 1992)). In this case, Plaintiffs were coerced into signing of their Subscription Agreements because they were expressly prohibited from reading any of the provisions of the Subscription Agreement and were not given any explanation as to any of its terms before they signed it (see Logunovski Decl. ¶ 2, Klimiuk Decl. ¶ 1, Kowalewski Decl. ¶ 2). Logunovski was threatened by Samandarov with the loss of his job unless he signs the Subscription Agreement. Such conduct by Samandarov and his agents clearly constitutes "disturbing showing of unfairness, undue oppression or unconscionability." See Arakawa, 56 F. Supp. 2d at 352; see also Klos, 133 F.3d at 169.

11. Additionally, the versions of the Subscription Agreements for Logunovski and Kowalewski relied on by Defendants (see Exhibits "C" and "D" to Samandarov Aff.) are different from the originals of the Subscription Agreements in the possession of Logunovski and Kowalewski (see Exhibit "A" to Logunovski Decl.; see also Exhibit "A" to Kowalewski Decl.). This further shows that the contract formation was unconscionable.

**Scope of the Agreement: Claims Asserted by Plaintiffs Are Not Arbitrable.**

12. Even assuming, *arguendo*, that Plaintiffs knowingly signed the Subscription Agreement and were informed by Defendants or their agents of the arbitration clause, the claims asserted by Plaintiffs in this action are *not* covered by the arbitration clause of the Subscription Agreement. Specifically, the arbitration clause cited by Defendants specifically provides that some claims are arbitrable and some are not (see, e.g., Exhibit "C", ¶ 20, to Samandarov Aff.). The non-arbitrable claims are, *inter alia*, those "arising from or in connection with the termination of this subscription agreement" and "arising from or in

5

connection with the suspension of the use of this subscription by the Subscriber" (see id.). Plaintiffs' claims here do arise from or in connection with the termination of the subscription agreement. Specifically, Klimiuk and Kowalewski were terminated by Samandarov without any warning. Samandarov's agents confiscated Klimiuk's car and Kowalewski's license plates (see Klimiuk Decl. ¶ 11; Kowalewski Decl. ¶ 10; Logunovski Decl. ¶¶ 14-15; see also Class Action Complaint ¶¶ 69-70, 78-79, 86). Logunovski was coerced into paying outstanding balance on the loans of the two cars that Samandarov confiscated from Klimiuk and Dmitry Ginsburg (see Class Action Complaint ¶¶ 78-79). Therefore, even if this Honorable Court finds that Plaintiffs knowingly and willingly signed their Subscription Agreements, Plaintiffs' claims nonetheless fall under non-arbitrable provision of the Subscription Agreement.

**The Federal Arbitration Act ("FAA") does not Apply Herein.**

13. Defendants here argue that FAA applies in this case (see Kaviar Memorandum at 10-13). Defendants further argue that the FAA exclusion for workers engaged in interstate commerce does not apply herein (see id. at 13). FAA specifically excludes "contract of employment of seamen, railroad employees, or *any other class of workers engaged in foreign or interstate commerce.*" See 9 U.S.C. Section 1 (emphasis added).

14. Plaintiffs engaged in interstate commerce since their drove Group American customers between New York, New Jersey, Pennsylvania and Connecticut (see, e.g., Klimiuk Decl. ¶ 2).

15. Defendants argue that the FAA exclusion applies only to workers who have a status of employees and not to those who are deemed independent contractors (see Kaviar Memorandum at 12). Defendants further argue that Plaintiffs here are independent contractors citing paragraph 6 of the Subscription Agreement that states that subscribers are independent

6

contractors. In his Affidavit, Samandarov further states that Plaintiffs are independent contractors (see id. ¶¶ 6-10).

16. In New York, "[t]he determination of whether an employer-employee relationship exists turns on whether the alleged employer exercises control over the results produced, or the means used to achieve the results. Control over the means is the more important consideration." See, e.g., Kuchinski v. Charge & Ride Inc., 21 A.D.3d 1062. 1064, 803 N.Y.S.2d 596 (2d Dept. 2005) (citing Abouzeid v. Grgas, 295 A.D.2d 376, 377, 743 N.Y.S.2d 165 (2d Dept. 2002)). Courts consider such factors as whether the worker worked at his own convenience, was free to engage in other employment, received fringe benefits, was on employer's payroll, and was on fixed schedule. See, e.g., Bynog v. Cipriani Group., 1. N.Y.3d 193, 198 (2003). As demonstrated above, Samandarov exercised complete control over both the results produced and means used to achieve the results.

17. Specifically, Samandarov demanded that Group American drivers drive only particular kinds of cars that had to be purchased from Popular Ford Sales. Samandarov at will confiscated the cars, as in the case of Klimiuk, and license plates, as in the case of Kowalewski. Samandarov registered the cars under BC Leasing, thereby denying the drivers any opportunity to challenge car confiscation, as in the case of Klimiuk (see Class Action Complaint ¶ 86). Samandarov enforced strict rules of dress code and display of Group American logo. Samandarov controlled the types of jobs each driver received and could re-assign one job to another. This way, Samandarov directly control the amount of earnings of a particular driver. Samandarov paid fringe benefits in the form of $10,000 bonus to top ten drivers and as part of the Voucher Fund. Samandarov imposed and withheld various fees and penalties from the driver's weekly paychecks. Samandarov instituted and controlled Communication Committee

and Security Council that regulated and enforced the myriad of rules designed by Samandarov. Samandarov terminated drivers at will, as in the case of Klimiuk and Kowalewski, and prohibited the drivers to engage in any other employment aside from Group Americar (see Logunovksi Decl, Klimiuk Decl, Kowalewski Decl.). These facts are clearly sufficient that Samandarov had a complete control over both the results produced and means used to achieve the results. See Kuchinski, 21 A.D.3d at 1064. Therefore, Plaintiff should be deemed employees of Group Americar and thus qualify for the FAA exemption.

**FOR THE FOREGOING REASONS**, it is respectfully requested that Defendants' Motion be dismissed in its entirety and for such other and further relief as to this Honorable Court deems just and proper.

Dated: New York, New York
November 21, 2007

By: _____/s/_____
Marina Trubitsky, Esq. (MT-9371)
Marina Trubitsky & Associates, PLLC
*Attorneys for Plaintiffs*
TADEUSZ KOWALEWSKI, NICHOLAS
KLIMIUK, OLEG LOGUNOVSKI and
STANISLAW PUCHALA
11 Broadway, Suite 861
New York, New York 10004
(212) 732-7707