UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TADEUSZ KOWALEWSKI, NICHOLAS
KLIMIUK, OLEG LOGUNOVSKI and
STANISLAW PUCHALA, individually and on behalf
of others similarly situated,

                            Plaintiffs,

v.

RUDOLF SAMANDAROV a/k/a RUDY
SAMANDAROV, GROUP AMERICAR
TRANSPORTATION LLC, BC LEASING, CORP.,
and individual partners of corporate defendants,
                            Defendants.

Civil Action No. 1:07-cv-06706
(RJS) (GWG)

DECLARATION OF NICHOLAS
KLIMIUK IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO
DISMISS THE COMPLAINT

---

I, Nicholas Klimiuk, declare as follows:

1. In December 2004, I started working for Defendant GROUP AMERICAR TRANSPORTATION LLC ("Group Americar"), as a driver number 111. At that time, Arkady Kogan, Group Americar's representative, informed me that I had to sign a contract. Mr. Kogan did not explain to me any of the terms or conditions of the contract I was about to sign. He did not allow me to read any part of the contract. He demanded that I sign the contract, right then and there in his presence, without reading it. After I signed the document, Mr. Kogan signed it as well. He did not give me copy of the contract.

2. At Group Americar, I worked as a limousine car driver. As part of my job, on an almost daily basis, I drove customers back and forth between New York, New Jersey, Pennsylvania, and Connecticut.

3. Samandarov prohibited me to have any other customers aside from Group Americar's customers even when driving other customers would not interfere with the performance of my duties at Group Americar.

4.  Samandarov enforced a very specific dress code. Samandarov demanded that all Group Americar drivers and I, when on duty, always wear a white shirt, black suite, dress shoes, and tie. If not, Samandarov imposed a fine, ranging between $500 and $1,000.

5.  Samandarov demanded that all Group Americar drivers and I, when on duty, always display a sign bearing Group Americar's name and logo in the front and in the back of their cars. If not, Samandarov imposed a fine, ranging between $500 and $1,000. Samandarov demanded that all Group Americar drivers drive only either Lincoln Town Car or Cadillac. In addition, Samandarov required that most Group Americar drivers buy their cars from Popular Ford Sales, Inc., located in Brooklyn, New York, even those drivers who have their own Lincoln Town Car or Cadillac. I had to buy a car at an inflated price from Popular Ford Sales.

6.  Samandarov, on behalf of Group Americar, promised to Group Americar drivers provide certain fringe benefits. For example, Samandarov instituted a Voucher Fund, pursuant to which every customer is charged an additional $3 per trip. One dollar of this amount is supposed to go to and accumulate in the account maintained for each driver and to be paid periodically in a lump sum. Additionally, Samandarov promised to pay $10,000 to the top ten drivers based on their performance.

7.  A pre-assigned job is an order for car service placed by a customer in advance, which usually pays close to or over $100. Pre-assigned jobs are coveted by the Group Americar drivers because they allow them to earn a significant amount, even after all the deductions from by Group Americar. However, the pre-assigned jobs are not given randomly by a dispatcher to any next available Group Americar driver. Rather, Samandarov personally determines which driver gets what pre-assigned job, if at all. A driver that owes a lot of money to Samandarov, Group Americar, BC Leasing, LOMTO, or Ford Credit usually gets to do a lot

2

of pre-assigned jobs because this allows Samandarov to withhold the loan amounts, other fees, and a high interest rate from this driver's weekly paycheck/voucher.

8.     All Group Americar drivers and I are aware of an internal Group Americar rule that on any given day, a driver is first assigned three "local" jobs, which are jobs within New York City where a customer typically pays between $15 and $20 per job. Once the driver performs three local jobs, he is then eligible for what is referred to as an "OT" job, which is an out-of-town job, and involves driving a customer from Manhattan to Long Island, New Jersey, Pennsylvania, or Connecticut or from one location, say, in New Jersey to another location in New Jersey. Here also Samandarov personally determines which job a driver would receive. For example, Samandarov can direct a dispatcher to assign a particular driver a job involving driving a customer from Manhattan to Jersey City during rush hour. Such a job is disfavored by Group Americar drivers, because although technically it is considered an "OT" job, but it usually does not pay more than $50 and a driver spends a considerable amount of time, up to several hours, performing this one job. If a driver gets several jobs of this nature, he can spend the whole day driving the customers yet earn only a small amount. On the other hand, if Samandarov directs a dispatcher to assign a driver a job in southern New Jersey, Pennsylvania, Connecticut or on Long Island, in which case a customer usually pays considerably more, up to $300 and more, such a job allows the driver to earn a much higher amount.

9.     Additionally, all Group Americar drivers and I are aware of an internal Group Americar rule that if a driver's gross earnings are less than $25,000 per year, Samandarov will fire him or her. This means that the Group Americar drivers cannot determine themselves how much or how little they work for Group Americar. All drivers know that, at the very least, they have to exceed the $25,000 threshold to keep their jobs. Since Samandarov personally controls

the assignment of the better-paying jobs, he can determine how long it would take, if at all, for any given driver to reach the $25,000 threshold.

10. Samandarov instituted a Communication Committee and Security Council which he personally oversees and controls. The Security Council is essentially an internal judicial mechanism which allows Samandarov and Group Americar to impose fines on the drivers and enforce many regulations by Samandarov governing driver's conduct and income. The Security Council holds hearings and has power to find a driver "guilty or not guilty" of an alleged "offense", and impose monetary fines, which can be as high as $1,000. The Security Council keeps a record of "major offenses" for three years and of "minor offenses" for one year.

11. Any Group Americar driver can be terminated at Samandarov's complete discretion. I was terminated by Samandarov without any warning. On or about July 21, 2005, Samandarov directed his agents to take away my car by towing it away from Kings Highway (on the corner of West 6th Street) in Brooklyn, New York, and changing a door key combination (see also Class Action Complaint ¶¶ 81-87).

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 21st, 2007, at Brooklyn, New York.

*Nicholas Klimiuk*
Nicholas Klimiuk